UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Patricia H. Green | : | CASE 1:04-cv-216 |
|    Plaintiff | : | (Hogan, M.J.) |
| | : | |
| vs. | : | |
| | : | |
| Jackson National Life Ins. Co., et al., | : | |
|    Defendants | : | |

## ORDER

This matter is before the Court on Defendant Jackson National Life Insurance Company's Motion for Summary Judgment (Doc. 20), Plaintiff Patricia Green's Response in Opposition (Doc. 21), and Defendant Jackson National Life Insurance Company's Reply. (Doc. 23).

### FACTUAL BACKGROUND

The factual record is not in dispute. Plaintiff Patricia Green and decedent, Carl Green, were married from December 7, 1976 until Mr. Green's death in 2003. (Plaintiff's Complaint, Doc. 1, Ex. A at ¶¶ 1, 8). Both had children from previous marriages. Mr. Green's two sons from a previous marriage are David and Paul Green. (Deposition of Patricia H. Green, at 27-28).

In 1983, the Greens both purchased term life insurance policies on their lives through Defendant, Jackson National Life Insurance Company. (*Id*. at 36-37). Plaintiff allowed her policy to lapse. (*Id*. at 39). Initially, Plaintiff was designated as the primary beneficiary of

decedent's $25,000 policy, and David Green, was named as a contingent beneficiary. (*Id*. at 39, 55). Plaintiff was the sole beneficiary of decedent's will, which was drafted in 1994 or 1995, and remained unchanged thereafter. (*Id*. at 41).

Plaintiff and decedent experienced marital difficulties in the Fall of 1991 and as a result, lived apart for several months. (Doc. 22, Ex. A at 1). On September 24, 1991, Dan Finke, the insurance agent for the Greens, wrote a letter to Defendant stating that Carl Green wanted his sons, Paul Green and David Green, to be the primary beneficiaries of his policy. (Green Depo., Ex. 2). Attached to this letter was a form signed by Mr. Green specifying this change. (*Id*.).

The Change of Beneficiary provision in the Insurance Contract states as follows:

> HOW BENEFICIARY MAY BE CHANGED While this Policy is in force, the Owner may change the Beneficiary, unless otherwise provided by endorsement, by filing at the Home Office of the Company an acceptable written request. Such change will be subject to any existing assignment of this Policy and will take effect only when recorded by the Company at its Home Office. When recorded, the change will take effect on the day the notice was signed. Any proceeds paid before a change of beneficiary is recorded will not be subject to change.

(Doc. 1, Ex. A at 3).

The beneficiary change form executed by decedent effectuated a change of beneficiary pursuant to the terms of the insurance policy. Plaintiff acknowledges that the signature on this document is in fact decedent's signature. (*Id*. at 61). However, plaintiff never discussed the insurance policy with decedent, Finke, Dave Green or Paul Green until October of 2002, and was therefore unaware of this change in beneficiary. (*Id*. at 61-63). Plaintiff assumed that she was the beneficiary of the policy during this time. (*Id*. at 62, 73).

In 1990, Mr. Green grew ill with diabetes. (*Id*. at 13). In 1992, Mr. Green needed procedures to fix cardiac difficulties. (*Id*. at 15). In 1992, Mr. Green began taking insulin for his diabetes. (*Id*. at 16). In 1994 or 1995, Mr. Green had 5-way bypass heart surgery. (*Id*. at 17).

Before his death, Mr. Green could no longer take care of himself.  Plaintiff bathed Mr. Green and had to assist him with bowel movements.  (*Id*. at 19).   However, Mr. Green had good mental capacity and still could  converse and write.  (*Id*. at 20).

According to plaintiff, in early October 2002, decedent asked Plaintiff to call Defendant's customer service to request information as to the identity of the primary beneficiary on his life insurance policy, to "make sure everything is in order." (*Id*. at 85-86).  Plaintiff typically made these calls for Mr. Green.  (*Id*. at 92).  Defendant's customer service representative told Plaintiff that he needed to speak with Mr. Green.  After Defendant's representative heard Mr. Green in the background, he continued to talk to Plaintiff, asking her the date of Mr. Green's birthday.  (*Id*. at 88).  The representative could not find a policy listed under Mr. Green's name and birth date.  (*Id*.).

Decedent then suggested that plaintiff call their insurance agent.  Finke directed Plaintiff to collect a copy of decedent's birth certificate and to handwrite a request for a copy of the policy.  (*Id*. at 91; *Id*. at Ex. 4).  Thereafter, plaintiff drafted an unsigned, handwritten letter dated 10/30/02 which states in part: "Could you please list the beneficiary on the policy."  (*Id*. at 95; Ex. 4).  Fink added his own notation to the letter clarifying decedent's date of birth, and forwarded it to defendant.  In response to this correspondence, defendant sent decedent a letter dated November 15, 2002.  (*Id*. at 95; Ex. 5).  The November 15, 2002 letter states in relevant part:

> Thank you for your request for policy information.  Because your policy was issued before 1986, a duplicate copy is not available.  However, we are able to provide you with the following policy summary:
>
> Insured:                                  Carl Green
> Owner (as of current date):               Carl Green

> Beneficiary (as of current date): Patricia Green
> Face Amount: $25,000.00
> Issue Date: September 13, 1983
> Issue Age: 59
> Plan of Insurance: Ultimate IV
>
> This certificate is issued based upon a written statement by the owner that the original policy has been lost or destroyed. This certificate in no way changes or modifies the terms and conditions of the original policy. It is verification that the above policy was issued. Any additional information about the benefits may be obtained at any time by writing to Jackson National Life's home office in Lansing Michigan.

Plaintiff subsequently found a copy of decedent's life insurance policy in her lockbox, but did not inform Finke or defendant that she had done so. (*Id*. at 101).

After Mr. Green died, Plaintiff called Finke and to ask him "what [she] needed to do to process [her] claim as beneficiary of the insurance" so that she could start paying the bills. (*Id*. at 104, 05). Mr. Finke told Plaintiff to send him a copy of Mr. Green's birth certificate as well as Mr. Green's obituary from the newspaper. (*Id*.). Mr. Finke promised to process the papers and told her that after Defendant responded in about 10-14 days, Mr. Finke would set up an appointment with her "to move forward." (*Id*. at 104-05).

On February 7th, 2003, Plaintiff received a letter from Defendant stating that Dave Green and Paul Green were the beneficiaries of the policy. (*Id*. at 107). Plaintiff called Mr. Finke that same day and told him about the letter naming David and Paul Green as the policy beneficiaries. Mr. Finke was surprised and told Plaintiff he would check into the situation. (*Id*. at 108). Mr. Finke called Plaintiff back later, and affirmed the contents of Defendant's letter. (*Id*.). Later that evening, Plaintiff called David and told him that he and Paul were the beneficiaries of the policy. (*Id*.). Paul Green came to Plaintiff's shop to pick up a copy of Mr. Green's birth certificate for his mother's use in redeeming her policy on Mr. Green. (*Id*. at 109). As

instructed by Mr. Finke, Plaintiff gave Paul the February 7th letter from Defendant specifying that David and Paul Green are the beneficiaries of the policy, Mr. Green's death certificate and the life insurance policy. (*Id.*).

Plaintiff concedes that decedent signed the change in beneficiary form in 1991 naming his sons as beneficiaries. Plaintiff claims that prior to his death, decedent discussed with her his wish that she use the insurance money to pay off his medical debt and funeral expenses, and then use the rest to take a vacation. (*Id.* at 125). Plaintiff argues that decedent intended that she be the beneficiary and that she and decedent relied to their detriment on defendant's November 15, 2002 which lists her as the named beneficiary.

## OPINION

### I. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.*, 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). The non-moving party must show more than a "mere scintilla of supporting evidence." *Livingston Care Ctr. v. Dep't of HHS*, 388 F.3d 168, 173 (6th Cir. 2004) (citing *Street v. J.C. Bradford & Co.*,

886 F.2d 1472, 1477 (6th Cir. 1989).  Furthermore, "if the evidence is merely colorable or is not significantly probative summary judgment may be granted."  *Id.* (citing *Anderson*, 477 U.S. at 249-50).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial.  *Anderson*, 477 U.S. at 249-50.  The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.  In making this determination, the "court must view the facts and all the inferences drawn from such facts in the light most favorable to the nonmoving party."  *Bell v. United States*, 355 F.3d 387, 392 (6th Cir. 2004) (citing *Sixty Ivy St. Corp.*, 822 F.2d at 1435).

If, after an appropriate time for discovery, the opposing party is unable to demonstrate the presence of a genuine issue of material fact, summary judgment is warranted.  *Street*, 886 F.2d at 1478 (citing *Celotex*, 477 U.S. at 327, 106 S. Ct. at 2555).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. Breach of Contract

Plaintiff brings two distinct breach of contract claims.  The first breach of contract claim is based on the theory that Plaintiff was a party to the contract because she paid the premiums due under the insurance policy.  The second claim is based on the theory that she is entitled to recover as a third party beneficiary to the contract between decedent and defendant.

Plaintiff alleges in her complaint that she performed all conditions precedent of the contract required by her to be performed, including, but not limited to, the payment of all premiums due defendant Jackson National Life Insurance and that Jackson failed to perform its duties and obligations required by the policy of insurance. Plaintiff's breach of contract claim based on payment of the premiums is without merit. A life insurance policy is a contract between two parties - the insured and the insurer, in this case, decedent and Defendant. In Ohio, "[t]he law has been long established that one who pays the premiums on a life insurance policy acquires thereby no rights not accorded to him by the contract." *In re Estate of Gilger*, 109 N.E.2d 333, 336, 63 Ohio L. Abs. 595. The life insurance policy at issue lists "Carl Green" as both the owner and the insured of the policy. Therefore, Plaintiff is not entitled to the proceeds of decedent's life insurance policy solely on the basis that she paid or contributed to payment of the premiums on the policy. Defendant is entitled to summary judgment on this claim.

Defendant also moves for summary judgment on plaintiff's breach of contract claim based on third party beneficiary status. Defendant argues that while Plaintiff was initially named as the beneficiary of Mr. Green's life insurance policy, decedent changed the beneficiary designation in 1991 to name his sons Dave and Paul. In response, plaintiff contends that: 1) Plaintiff was an intended third party beneficiary and therefore Defendant owes Plaintiff a duty to pay the proceeds of the life insurance policy to her; 2) Defendant's November 15, 2002 letter constitutes a waiver by defendant of decedent's obligation to take certain procedural steps required to change the beneficiary of the policy; and 3) decedent substantially complied with the requirements for changing the beneficiary and therefore the Court should determine that plaintiff is entitled to the policy proceeds as an intended beneficiary. The Court will address each of these arguments in turn.

1.      Plaintiff was an Intended Third Party Beneficiary

In *Hill v. Sonitrol of Southwestern Ohio, Inc.* 36 Ohio St. 3d 36, 39, 521 N.E.2d 780, 784 (1988), the Ohio Supreme Court adopted an intent to benefit test as set forth in the Restatement (Second) of Contracts § 302 (1981) for determining when a third party is an intended beneficiary and as such is entitled to enforce a contract. The *Hill* test provides that:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either.
>
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

*Id*. The Ohio Supreme Court further explains that: "Performance of a contract will often benefit a third person. But unless the third person is an intended beneficiary as here defined, no duty to him is created." *Id*. (citing Restatement (Second) of Contracts § 302 (1981) cmt. e). Moreover, in the life insurance context, where the life insurance policy reserves to the insured the right to change the beneficiary, the beneficiary designated does not have a vested interest in the contract; rather the designated beneficiary has an expectancy during the life of the insured, contingent upon being the beneficiary at the time of the insured's death. *Katz v. Ohio Nat'l Bank*, 127 Ohio St. 531, 535 (1934).

Plaintiff was initially listed as the beneficiary of decedent's life insurance policy. However, in 1991 decedent changed the beneficiary designation on his policy to his sons. Plaintiff does not dispute the validity of the decedent's 1991 change in beneficiary. Plaintiff was

never re-designated as a beneficiary under decedent's policy.  Accordingly, plaintiff is not an intended third party beneficiary.

> 2) <u>Defendant's November 15, 2002 Letter Constitutes a Waiver of the Required Procedures to Change the Policy Beneficiary</u>

Plaintiff next argues that defendant' November 15, 2002 letter constitutes a waiver of the required procedure for effecting a change in beneficiary.  Plaintiff also argues that the method for changing the beneficiary designation set forth in the policy is not exclusive.  In support of this argument plaintiff points to the word "may" used in the heading of the policy section detailing how to make a change in beneficiary designation.   The heading to this section of the policy states "HOW BENEFICIARY MAY BE CHANGED."  (Doc. 1, Ex. A at 3).Two procedures by which a beneficiary may be changed are listed within this section.  The first procedure allows the owner of the policy to initiate a change in beneficiary by filing a written request at the Home Office following which the Home Office must record the change.  (*Id*.).  Secondly, the policy may be changed "as otherwise provided by endorsement."  (*Id*.).

To the extent that plaintiff argues that a written request signed and executed by the insured and filed at the defendant's home office is not the exclusive means of changing a beneficiary designation under the terms of the policy language, the Court finds that argument to have merit.  Nevertheless, plaintiff's breach of contract claim is not saved by such an argument.  Decedent did not file a written change of beneficiary naming the plaintiff after 1991.  Nor is there any evidence that defendant and decedent agreed to modify the method for changing a beneficiary designation, by endorsement or otherwise.

Plaintiff further argues that even if these procedures are the only ways in which Mr. Green could change the beneficiary of his life insurance policy, Defendant was permitted to

waive these procedures and did in fact waive them in the November 15, 2002 letter.  Waiver is "the voluntary and intentional relinquishment of a known right" arising from a unilateral, affirmative act by the insurer.  *Jones v. Jackson Nat'l Life Ins. Co.*, 1994 U.S. App. LEXIS 15400 at * 12 (6th Cir. 1994).

An insurance company can waive its right to enforce procedures pertaining to the change of beneficiary designation by interpleading the claimants and depositing the proceeds of the insurance policy with the courts.  *Atkinson v. Metropolitan Life Ins. Co.*, 114 Ohio St. 109, 150 N.E. 748, syllabus ¶ 4 (1926).  In this case, Defendant did not waive its right to enforce the procedure for making a change in beneficiary designation by bringing an interpleader action.  Nor did defendant take any other action to expressly waive its right to enforce the beneficiary change procedure in this case.  The November 15, 2002 letter does not constitute such a waiver.  The letter by its terms states that it is intended as a response to a request for policy information, and that "this certificate in no way changes or modifies the terms and conditions of the original policy."

Instead, Defendant mistakenly provided Mr. Green with incorrect information as to the identity of the current beneficiary of his life insurance policy.  While Defendant's November 15, 2002 letter does not operate as a waiver of its procedural rights in effectuating a change in beneficiary, Plaintiff has other remedies to be discussed *infra* resulting from the consequences caused by the mistake in Defendant's November 15, 2002 letter.

    3)  <u>Decedent Substantially Complied with the Procedure for Changing His Beneficiary Designation</u>

Plaintiff argues that decedent substantially complied with the requirements for changing the beneficiary designation based on the October 2002 handwritten request for policy

information and defendant's November 15, 2002 letter in response. Plaintiff argues that decedent refrained from taking additional action to change his designation in reliance on the information in that letter, and that he should not have been expected to inquire further.

Under Ohio law, where the insured has an unconditional right to change the beneficiary of an insurance policy, a change may be effected even if the provisions of the policy setting forth the manner of effecting the change were not complied with exactly. *Tomaneng v. Reeves*, 180 F.2d 208, 209 (6th Cir. 1950)(citing *Atkison*, 114 Ohio St. 109). In order for the doctrine of substantial compliance to apply, the insured must (1) have determined to change the beneficiary; and (2) have done everything to the best of his ability to effect the change." *Id. See also Aetna Life Ins. Co. v. Hayes*, 324 F.2d 759, 761 (6th Cir. 1963). Merely requesting information concerning the named beneficiary of a policy does not constitute substantial compliance under this test. Decedent's initial request for policy information did not express a desire, nor manifest an intent to change the named beneficiary under his policy. Decedent neither requested nor executed a change of beneficiary form naming plaintiff even though he had properly followed the method for effecting such a change in 1991 when he named his sons as beneficiaries. *Tomaneng,* 180 F.2d at 209; *Aetna*, 324 F.2d at 761. *Cf. Nationwide Life Ins. Co. v. McClure*, 1983 WL 4323, at *2 (Ohio Ct. App. April 6, 1983). For these reasons, defendant is entitled to summary judgement on plaintiff's breach of contract claim.

**III. Bad Faith**

Plaintiff asserts a bad faith claim against defendant alleging that the insurer's failure to pay her the proceeds of the policy constitutes bad faith. An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor. *Zoppo v. Homestead Ins. Co.*, 71

Ohio St. 3d 552, 644 N.E.2d 397 syllabus ¶ 1 (1994). The insured has the burden of establishing bad faith on the part of the insurance company. *Rauh Rubber, Inc. v. Berkshire Life Ins. Co.*, 1999 U.S. App. LEXIS 34043 * 7 (6th Cir. 1999)(internal citations omitted). In this case, plaintiff's breach of contract claims are without merit and therefore there is no basis for a bad faith claim. Defendant is entitled to summary judgment on this issue.

**IV.     Promissory Estoppel**

Plaintiff alleges that both she and decedent relied on Defendant's statements, assertions, and conduct that identified Plaintiff as the sole beneficiary of the subject policy to their detriment; therefore, Plaintiff was harmed in the amount of $25,000.

In Ohio, the doctrine of promissory estoppel provides that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Mers v. Dispatch Printing Co.*, 19 Ohio St. 3d 100, 104, 483 N.E.2d 150, 154 (1985) (citing *Talley v. Teamsters Local No. 377*, 48 Ohio St. 2d 142, 146, 357 N.E.2d 44, 47 (1976)). To establish promissory estoppel, the Plaintiff must show: 1) a clear and unambiguous promise; 2) reliance on that promise; 3) reliance that was reasonable and foreseeable; and 4) damages caused by that reliance. *Rucker v. Everen Secs., Inc.,* 102 Ohio St.3d 1247, 1248 (2004).

In the present case, plaintiff is unable to establish a promissory estoppel claim for two reasons. First, plaintiff cannot demonstrate that defendant made a clear and unambiguous promise to her. The November 15, 2002 letter does not constitute a promise to pay plaintiff any sum of money. Assuming without deciding that the letter could be construed as a promise, the promise was made to decedent, not to plaintiff. Furthermore, the letter itself states that it does

not change the policy's terms or conditions. Moreover, plaintiff cannot show detrimental reliance on the alleged promise. If anyone relied on the letter, it was decedent who supposedly refrained from taking further action with respect to the named beneficiary under his policy. Plaintiff cannot demonstrate any reliance on the letter. As discussed *supra*, plaintiff is not an intended third party beneficiary under the policy and thus she has no contractual rights to enforce. *Katz*, 127 Ohio St. at 535. For these reasons, defendant is entitled to summary judgment on plaintiff's promissory estoppel claim.

## IT IS THEREFORE ORDERED THAT:

Defendant's motion for summary judgment is GRANTED and this case is terminated on the docket of this Court.

Date:  5/13/2005                         s/Timothy S. Hogan
                                         Timothy S. Hogan
                                         United States Magistrate Judge

J:\LWW\04-216 Green msj.wpd